**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| S. D. STEINMETZ,<br><br>                      Plaintiff,<br>vs.<br>GENERAL ELECTRIC COMPANY, GENERAL ELECTRIC CAPITAL CORPORATION, EXXONMOBIL OIL CORPORATION, CITIGROUP, INC.,<br><br>                      Defendants. | CASE NO. 08CV1635 JM (AJB)<br><br>**ORDER GRANTING DEFENDANT CITIBANK (North Dakota), N.A.'s MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Doc. No. 51 |

      Pending before the court is a motion to dismiss Plaintiff's Second Amended Complaint ("SAC," Doc. No. 48) by Defendant Citibank (South Dakota), N.A., erroneously sued as Citigroup, Inc. ("Citibank"). ("Mot.," Doc. No. 51.) The court finds the matter suitable for decision without oral argument pursuant to Civ.L.R. 7.1(d). Based on a review of the parties' submissions and the applicable authorities, the court hereby **GRANTS** Citibank's motion to dismiss.

**I. BACKGROUND**

      According to the allegations set forth in the SAC, an "Exxonmobil Credit Card account" (the "Account") credit card was issued to Plaintiff by GE Money Bank in January 2006. (SAC ¶¶ 14-15.) Plaintiff petitioned for bankruptcy in April 2006 but neither included the Account in the proceedings nor informed GE Money Bank about the bankruptcy. (SAC ¶ 23.) On or about October 10, 2006, after the bankruptcy had been discharged, Plaintiff allegedly was informed by a "customer service

1 representative" the Account had been closed because Plaintiff had filed for bankruptcy. (SAC ¶¶ 27, 32.) Plaintiff subsequently learned that, sometime prior to March 2007, the Account status was reported by major credit reporting agencies ("CRAs") (i.e. TransUnion and Equifax) as having been included in Plaintiff's Chapter 7 bankruptcy. (SAC ¶¶ 37, 80.) In reviewing his credit reports between March 30, 2007 and late 2007, Plaintiff noticed additional minor changes to the reporting of the Account. (SAC ¶¶ 40, 42.) Between November 2007 and January 2008, Plaintiff disputed the allegedly inaccurate reporting on various occasions through the CRAs. (SAC ¶¶ 41-47.) Responses from Trans Union and Equifax indicated their investigations warranted no changes to the reporting status of Plaintiff's ExxonMobil account. (SAC ¶¶ 46-47.)

With respect to movant Citibank, Plaintiff alleges that "[a]bout January 2008, defendant Exxonmobil Oil Corporation changed its bank partner and proxy credit issuer in Exxonmobil Credit Card. Presumably, former partner GE Money Bank disclosed customer information to new partner Citibank (South Dakota), N.A., and possibly vice versa...." (SAC ¶ 45.) Plaintiff alleges Citibank "took over the management of said account, and assumed full responsibility for information that was furnished, withheld, modified, deleted, accessed, or otherwise available to CRAs with regard to said account." (SAC ¶ 45.) Plaintiff contends "discoverable furnishers of information" erroneously reported the account as "included in bankruptcy," or subject to "Chapter 7 bankruptcy" and that beginning in January 2008, Citibank "continued to furnish wildly inaccurate information" regarding the account. (SAC ¶¶ 84, 136.) Finally, Plaintiff suggests the "discoverable furnishers of information" failed to investigate the disputed information when notified of the dispute by the CRAs. (SAC ¶ 111.)

In his SAC, Plaintiff recites a total of 737 counts against "unassociated but discoverable furnishers of information," asserting violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785 *et seq.* ("CCRAA"), and the California Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.* ("Rosenthal Act"), and claims for defamation "by language libelous on its face." (FAC at 32-33.)

//

//

## II.  DISCUSSION

### A.  Legal Standards

Rule 12(b)(6) dismissal is proper only in "extraordinary" cases. U.S. v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).  In evaluating a 12(b)(6) motion, the court must accept the complaint's allegations as true and construe them in the light most favorable to Plaintiff.  See, e.g., Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S.Ct. 1710 (1996).  However, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level...." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) (allegations must provide "plausible grounds to infer" that plaintiff is entitled to relief).  The court should grant 12(b)(6) relief where the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In testing the complaint's legal adequacy, the court may consider material properly submitted as part of the complaint, including exhibits attached thereto, or material subject to judicial notice.  Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007).

Where a plaintiff sues multiple defendants and sets forth multiple causes of action, he "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them." Gauvin v. Trombatore, 682 F.Supp. 1067, 1071 (N.D.Cal. 1988).  Even absent other pleading deficiencies, such "confusion of which claims apply to which defendants would require that the complaint be dismissed with leave to file an amended complaint." Gen-Probe, Inc. v. Amoco Corp., 926 F.Supp. 948, 961 (S.D.Cal. 1996)(citing Gauvin, 682 F.Supp. at 1071.) "Specific identification of the parties to the activities alleged is required...to enable the defendant[s] to plead intelligently."  Van Dyke Ford, Inc. v. Ford Motor Co., 399 F.Supp. 277, 284 (E.D.Wis. 1975).

At the same time, the court has a duty to liberally construe a pro se litigant's pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S.

89, 127 (2007) (per curiam) (citation omitted); Woods v. Carey, 525 F.3d 886, 889 (9th Cir. 2008). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170,1173-74 (10th Cir.1997) (quotations and citations omitted).

**B. Analysis**

### *1. Sufficiency of the Pleadings under Rule 8*

The bulk of the allegations in Plaintiff's SAC identify conduct by the CRAs in reporting the credit information and responding to his disputes. As was the case in Plaintiff's prior complaint, specific allegations against Citibank are few and far between. Citibank argues there are "no allegations whatsoever regarding any conduct by Citibank." (Mot. at 1.) As discussed in the analysis below, the court finds Plaintiff's allegations against Citibank inadequate to support each claim. In addition, Rule 8 warns, "A pleading that states a claim for relief must contain...a *short and plain statement of the claim* showing that the pleader is entitled to relief...." Fed. R. Civ. P. 8(a)(2) (emphasis added). Plaintiff's SAC, ballooning to a grand total of 240 pages and containing reams of irrelevant and confusing information, completely ignores the Rule 8 standard. Plaintiff's SAC is subject to dismissal on this basis alone.

Furthermore, despite the court's admonitions in its prior ruling, Plaintiff still has not specified which claims are brought against which defendants. Generally, this indiscriminate, "shotgun" approach would not meet the Rule 8 pleading standard. However, construing the pleadings liberally, the court interprets each claim as being asserted against each named defendant. Consistent with that interpretation, Citibank addresses each class of claims in its motion to dismiss.

### *2. Federal Debt Collection Practices Act and Rosenthal Act Claims*

Pursuant to the court's February 25, 2009 order, Plaintiff's claims against Citibank arising under the FDCPA and the Rosenthal Act were previously dismissed with prejudice.

### *3. Federal Credit Reporting Act Claims*

Plaintiff's claims under the FCRA are brought under 15 U.S.C. § 1681s-2(b)(1)(A)-(E).[1] (SAC

---

[1] Citibank argues there is no private right of action for violations under 15 U.S.C. § 1681s-2(a). (Mot. at 8.) Plaintiff has not raised any claims under this provision so the argument is irrelevant.

1    at 40.) These provisions require a furnisher of credit information, such as a credit card issuer, to
2    promptly investigate disputed information and take corrective action, where necessary, only upon
3    notice of a dispute from a CRA. 15 U.S.C. §§ 1681s-2(b)(1) and 1681i(a)(2). A furnisher's duties
4    "arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received
5    directly from the consumer does not trigger furnishers' duties under subsection (b)." Gorman v.
6    Wolpoff & Abramson, LLP, 552 F.3d 1008, 1014 (9th Cir. 2009). Civil liability attaches for willful
7    or negligent noncompliance with the statutes. See 15 U.S.C. §§ 1681n, 1681o.[2] To state a claim under
8    the FCRA against Citibank as a furnisher of credit information, Plaintiff must allege: 1) that he
9    contacted the CRAs; 2) the CRAs pursued the claim; and 3) the CRAs contacted Citibank regarding
10   the dispute, triggering Citibank's duty to investigate. See Roybal v. Equifax, 405 F.Supp.2d 1177,
11   1180 (E.D. Cal. 2005).

12   Plaintiff does allege Citibank was in charge of his account at the time he disputed its status
13   with the CRAs in late 2007 and early 2008.[3] He alleges he initiated a dispute with the CRAs and that
14   the CRAs investigated the account with the reporting entities. (SAC ¶¶ 44-47.) For example, Equifax
15   indicated it had "contacted each source directly" and the subject account was "reporting included in
16   bankruptcy." (SAC ¶¶ 47, 62.) In an October 2008 letter to Plaintiff, Trans Union indicates it
17   investigated the dispute by contacting ExxonMobil. (SAC ¶ 58.) Plaintiff suggests Citibank knew
18   the account was not included in his bankruptcy and was therefore obliged to correct the information.
19   (SAC ¶ 84.)

20   Plaintiff's claims are missing a key link, however, as he never alleges the CRAs actually gave
21   notice of his dispute to *Citibank directly*, and Plaintiff's pleadings actually support a contrary
22   conclusion. As mentioned above, Trans Union indicated to Plaintiff that it investigated his dispute
23   by contacting *ExxonMobil*, not Citibank. (SAC ¶ 58.) Without notice of the dispute from a CRA,

---

[2] Citibank argues Plaintiff cannot state a claim under the FCRA because he cannot establish "willful" behavior by Citibank. As discussed, a showing of willfulness is not required. "The FCRA expressly creates a private right of action for willful *or* negligent noncompliance with its requirements." Gorman, 552 F.3d at 1014.

[3] With his Opposition, Plaintiff submitted a letter from Citibank indicating it purchased the subject account in December 2006. (Opp., Exh. 1.) While this letter does not form part of the pleadings, Citibank does not dispute the timing of its acquisition of the Account. (Reply at 2, fn. 2.) Thus, it would appear Citibank owned the Account at the time the CRA disputes were in progress.

1  Citibank had no obligations under the FCRA. In the absence of a pleading of notice by the CRAs to
2  Citibank, which Plaintiff would be required to prove with evidence should the case go forward, the
3  FCRA claims are fatally defective. Accordingly, Citibank's motion to dismiss Plaintiff's FCRA
4  claims is **GRANTED**.

*4. California Consumer Credit Reporting Act Claims*

Plaintiff brings claims against all defendants for violation of Cal. Civ. Code § 1785.25(a), which provides, "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." A consumer's private right to enforce the CCRAA arises under § 1785.31: "Any consumer who suffers damages as a result of a violation of this title by any person may bring an action...against that person to recover" damages.[4] The Ninth Circuit has confirmed such claims survive the preemption provisions of the FCRA. Gorman, 552 F.3d at 1032.

Citibank argues Plaintiff fails to provide any relevant factual basis for the CCRAA claims. (Mot. at 11.) Plaintiff does allege that Citibank became responsible for providing account status information to the CRAs when it purchased the subject Account in December 2006. (SAC ¶ 45; Opp. ¶ 6, Exh. 1.) He also alleges "discoverable furnishers of information" knowingly furnished false information to the CRAs. (SAC ¶ 84.) Plaintiff argues the reports which stated the Account was "included in bankruptcy" or subject to "Chapter 7 bankruptcy" were, in fact, inaccurate because the Account was not included in his Chapter 7 proceedings. Finally, Plaintiff suggests Citibank was aware the Account had not been part of the bankruptcy because Citibank had access to Plaintiff's account records and his publicly available bankruptcy documents. (SAC ¶¶ 45, 58.)

In spite of these contentions, Plaintiff once again fails to cover all his bases. Nowhere in his voluminous SAC does he actually claim that *Citibank itself* provided any information to the CRAs nor

---

[4] Cal. Civ. Code § 1785.25(g) provides, "A person who furnishes information to a consumer credit reporting agency is liable for failure to comply with this section, unless the furnisher establishes by a preponderance of the evidence that, at the time of the failure to comply with this section, the furnisher maintained reasonable procedures to comply with those provisions." While this section has been incorrectly construed as offering a separate authorization for a private cause of action against a furnisher, see Lin v. Universal Card Servs. Corp., 238 F.Supp.2d 1147, 1152 (N.D.Cal. 2002), California courts have ruled it provides only "a partial defense to furnishers of credit information..." Sanai v. Saltz, 170 Cal.App.4th 673, 771, n. 18 (2009)(emphasis added).

what information that might have been. Plaintiff's conclusory comment that Citibank "continued to furnish wildly inaccurate information" does not suffice. (SAC ¶ 136.) In addition, although Plaintiff infers that Citibank was aware of the correct status of his Account, he falls well short of alleging specifically that *Citibank knowingly* provided any false information. Vague statements imputing knowledge to unnamed "discoverable furnishers of information" does not provide enough credible information to conclude Plaintiff's claim for relief "is plausible on its face." Bell Atlantic, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...") (internal citations omitted).

Furthermore, Plaintiff's own submissions seemingly undermine any allegations that Citibank was responsible for the inaccurate reports on his Account. First, Plaintiff offers that the Account was reported correctly in March 2006 (SAC ¶ 77) and was updated inaccurately sometime prior to March 30, 2007 (SAC ¶ 37). Citibank did not acquire the account until December 28, 2006, leaving little time for it to have altered the account reports. (Opp. ¶ 6, Exh. 1.) The letter from TransUnion to Plaintiff identifies the source of the information as ExxonMobil, not Citibank. (SAC ¶ 58.) Based on the foregoing, the court concludes Plaintiff has failed to plead several required elements under the CCRAA, and the court therefore **GRANTS** Citibank's motion to dismiss these claims.

### 5. State Law Defamation Claims

Plaintiff asserts claims for defamation by libel under Cal. Civ. Code §§ 44-45, alleging the "discoverable furnishers of information knowingly furnished false information" regarding the bankruptcy status of the Account to the CRAs in order to "knowingly and willingly injure" Plaintiff. (SAC ¶¶ 89-90, 99, 104.) Under California law, "[l]ibel is a false and unprivileged publication...which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. Thus, to survive a motion to dismiss on a defamation claim, a plaintiff must allege: 1) a defendant; 2) intentionally published a statement of fact; 3) that is false; 4) unprivileged; and 5) has a natural tendency to injure (libel *per se*) or causes special damages. Smith v. Maldonado, 72 Cal.App.4th 637, 645-46 (1999).

1    In actions dealing with credit reporting activities, at least some state law defamation claims
2 are preempted.  Under the FCRA, "Except as provided in sections 1681n and 1681o of this title, no
3 consumer may bring any action or proceeding in the nature of defamation...except as to false
4 information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e).
5 Thus, unless a plaintiff alleges a defendant acted with "malice or willful intent to injure," a state law
6 defamation claim based on credit reporting activities is expressly preempted by the FCRA.[5] Gorman,
7 370 F.Supp.2d at 1010 ("Subsection 1681h(e) preempts only defamation actions that do not allege
8 malice or willful intent to injure.").  The FCRA, then, grafts the sixth element of malice onto the state
9 law requirements.

10    In ruling on the sufficiency of this state law claim, the court applies federal law pleading
11 standards, although the standard for dismissal in state court "is highly relevant." Church of
12 Scientology of Calif. v. Flynn, 744 F.2d 694, 696 n. 2 (9th Cir.1984).  To satisfy the pleading
13 requirements for an actionable defamation claim, a plaintiff must offer more than conclusory,
14 non-descriptive phrases but rather "must allege facts sufficient to support a claim that the defendant
15 was acting with reckless disregard for the truth. McGarry v. Univ. of San Diego, 154 Cal.App.4th 97,
16 114 (2007).  In addition, while a plaintiff need not plead the allegedly defamatory statement verbatim,
17 the specifics and the substance of the allegedly defamatory statement must be identified.  See Okun
18 v. Superior Court, 29 Cal.3d 442, 458, 175 Cal.Rptr. 157, 629 P.2d 1369 (1981) (citations omitted),
19 cert. denied, 454 U.S. 1099, 102 S.Ct. 673, 70 L.Ed.2d 641 (1981); Silicon Knights, Inc. v. Crystal
20 Dynamics, Inc., 983 F.Supp. 1303, 1314 (N.D.Cal.1997).  Less particularity is required when it
21 appears that defendant has superior knowledge of the facts, as long as the pleading gives notice of the
22 issues sufficient to enable preparation of a defense. Bradley v. Hartford Acc. & Indem. Co. 30
23 Cal.App.3d 818, 825 (1973).

24    Plaintiff does allege false statements of fact were intentionally communicated to the CRAs
25 about his Account status.  He therefore has met the requirements for the second and third elements

---

[5]Whether defamation claims are preempted even with allegations of malice or willful intent to injure is an issue subject to debate among district courts and has yet to be resolved by the Ninth Circuit.  See Gorman, 552 F.3d at 1025-1027.  For the purposes of ruling on this motion, the court assumes without deciding that a defamation claim premised on malice or willful intent is not preempted by the FCRA.

listed above. Citibank urges the court to dismiss Plaintiff's defamation claims because he "does not identify any particular allegedly defamatory statement made by Citibank regarding Plaintiff." (Mot. at 12.) As discussed in the preceding sections, Plaintiff has not alleged *Citibank* was actually responsible for the publication of any information to the CRAs. In addition, other than stating Citibank furnished "wildly inaccurate information," Plaintiff nowhere identifies any specific actionable statements made by Citibank. Plaintiff therefore has not pled sufficient facts to support the first element of his defamation claims. The court notes Plaintiff has not addressed the issue of privilege, the fourth recited element, at all.

As to the fifth element, which deals with the defamatory or harmful nature of the statement itself, Plaintiff has missed the mark. "Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a result thereof." Cal. Civ. Code § 45a. Thus, unless a statement is defamatory *per se*, a plaintiff must plead special damages. On one hand, Plaintiff argues in conclusory fashion that the questioned statements "included in bankruptcy" or "Chapter 7 bankruptcy" are defamatory *per se.* (SAC ¶ 92.) On the other hand, Plaintiff engages in a lengthy interpretation of the statements in context, examining aspects of "innuendo," "extrinsic facts," and "libelous connotations." (SAC ¶¶ 93-94, 96.) Whether a statement is reasonable susceptible to a defamatory interpretation is a question of law for the court. MacLeod v. Tribune Publ'g Co., 52 Cal.2d 536, 546 (1959). Contrary to Plaintiff's assertion, the "mere allegation of not paying debts is not defamatory per se." Woods v. Protection One Alarm Monitoring, Inc., 2007 WL 2391075, at *13 (E.D.Cal. Aug. 22, 2007) (citing Gautier v. Gen. Tel. Co., 234 Cal.App.2d 302, 309 (1965)). Such statements may be defamatory where they lead one to conclude that a plaintiff's failure to pay his obligation stemmed for dishonest motives or an intent to defraud a creditor, where a plaintiff's business interests are affected by his reputation for credit worthiness. Id. (citing Gautier, 234 Cal.App.2d at 309-310); Ingraham v. Lyon, 105 Cal. 254, 257 (1894). As the statements "included in bankruptcy" and "Chapter 7 bankruptcy" do not lend themselves to such negative interpretations and therefore do not qualify as libel *per se*. In this situation, Plaintiff was required to plead special damages, which he failed to do.

Finally, Plaintiff has fallen far short of pleading Citibank acted with the requisite malice.

1  While Plaintiff offers that "discoverable furnishers of information" acted "knowingly" and "with
2  malice," these general and conclusory statements do not support a claim that Citibank acted with "a
3  state of mind arising from hatred or ill will toward the plaintiff" or with a reckless disregard for
4  Plaintiff's rights.  Woods, 2007 WL 2391075, at *14 (citing Roemer v. Retail Credit Co., 44
5  Cal.App.3d 926, 936 (1975)).
6  Because Plaintiff has failed to plead all the required elements, Citibank's motion to dismiss
7  is **GRANTED** and Plaintiff's common law defamation claims are **DISMISSED**.

8  **III.  LEAVE TO AMEND**

9  Leave to amend is liberally granted to *pro se* litigants unless it is "absolutely clear that the
10  deficiencies of the complaint could not be cured by amendment."  Noll v. Carlson, 809 F.2d 1446,
11  1448 (9th Cir. 1987) (citing Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980)).  Here, the
12  court finds Plaintiff could conceivably cure the deficiencies in his SAC.  However, Plaintiff must
13  address all the issues outlined herein, or any subsequent complaint will be subject to dismissal.

14  First, as discussed above, Plaintiff fails to allege facts to support each element of each claim.
15  Plaintiff must address these shortcomings, while recognizing that "the court need not accept as true
16  conclusory allegations...or unreasonable inferences."  Transphase Sys., Inc. v. So. Cal. Edison Co.,
17  839 F.Supp. 711, 718 (C.D.Cal. 1993) (internal citation omitted).

18  Second, the format of Plaintiff's complaint must be corrected to satisfy federal pleading
19  standards.  In an amended complaint, Plaintiff should not submit a voluminous pleading, but simply
20  must provide the defendants with a "short and plain statement" of his claims and his entitlement to
21  relief.  Fed. R. Civ. P. 8.  Any extraneous documents, exhibits, or allegations unrelated to Plaintiff's
22  claims against the named defendants should not be presented.  Citations within the complaint to any
23  attached exhibits must be accurate and exhibits which are not referenced in the complaint should be
24  excluded.

25  Third, Plaintiff cites throughout the SAC to "unassociated but discoverable defendants" and
26  "discoverable furnishers of information" without identifying to which, if any, of the named defendants
27  he refers.  This vague presentation also runs afoul of the Rule 8 standards.  Plaintiff argues in his
28  opposition that he does not need to associate specific allegations or claims with specific parties.  To

the contrary, as stated above, "[s]pecific identification of the parties to the activities alleged is required...to enable the defendant[s] to plead intelligently." <u>Van Dyke</u>, 399 F.Supp. at 284. To wit, Plaintiff implies the court and the defendants should infer that previously dismissed claims are not being realleged against Citibank; however, since all the pending claims name "discoverable furnishers of information," Plaintiff's logic would lead to the conclusion that he had dropped all claims against Citibank.

## IV.  CONCLUSION

For the reasons set forth above, Citibank's motion to dismiss is **GRANTED.** The court hereby **DISMISSES** Plaintiff's claims against Citibank under the FCRA, the CCRAA, and for defamation without prejudice. Plaintiff shall file and serve a Third Amended Complaint **no later than 30 days** from the date of entry of this order. Plaintiff must address the pleading deficiencies outlined above and may not add new claims.

**IT IS SO ORDERED.**

DATED:  July 13, 2009

_____
Hon. Jeffrey T. Miller
United States District Judge